UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ROGER PAUL LANKFORD,                                    Case No. 1:14-cv-682
    Plaintiff,                                              Litkovitz, M.J.

    vs.

RELADYNE, LLC, *et al.*,                                **ORDER**
    Defendants.

This matter is before the Court on plaintiff's application for attorneys' fees and costs

(Doc. 88), defendant's memorandum in opposition (Doc. 94), and plaintiff's reply memorandum

(Doc. 97). This matter is also before the Court on plaintiff's motion to clarify the prejudgment

interest rate and duration (Doc. 92), defendant's memorandum in opposition (Doc. 96), and

plaintiff's reply memorandum (Doc. 99). Finally, this matter is before the Court on plaintiff's

motion for post-judgment interest (Doc. 93), defendant's memorandum in opposition (Doc. 95),

and plaintiff's reply memorandum (Doc. 98).

**I. Background**

    After trial, a jury returned a verdict for plaintiff on his claims of interference and

retaliation under the Family Medical Leave Act of 1993 ("FMLA"). (Doc. 84 at 2). The jury

awarded plaintiff $142,717.71 for defendant's violation of plaintiff's FMLA rights. (*Id.* at 3).

After considering the parties' post-trial briefs on FMLA liquidated damages, the Court awarded

plaintiff liquidated damages in the amount of $142,717.71 plus prejudgment interest at the

statutory rate. (Doc. 89). The Court then entered judgment to that effect. (*See* Doc. 90).

**II. Motion for Attorneys' Fees and Costs (Doc. 88)**

    Under the FMLA, the Court "shall, in addition to any judgment awarded to the plaintiff,

allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to

be paid by the defendant." 29 U.S.C. § 2617(a)(3). In determining what constitutes a reasonable

fee, the Supreme Court has held that the starting point "is the number of hours reasonably

expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461

U.S. 424, 433 (1983). This is known as the lodestar method. Further, the Supreme Court has

held that the fee applicant must produce evidence "to justify the reasonableness of the requested

rate." *Blum v. Stenson*, 465 U.S. 886, 896 (1984). The Court should look to the prevailing

market rate to determine the reasonableness of the requested rate. *See, e.g., id.* at 895;

*Northcross v. Bd. of Educ. of Memphis City Sch.*, 611 F.2d 624, 638 (6th Cir. 1979), *abrogation*

*on other grounds recognized by L & W Supply Corp. v. Acuity*, 475 F.3d 737 (6th Cir. 2007).

The Sixth Circuit has also stated:

> Generally, a "strong presumption" favors the prevailing lawyer's entitlement to
> his lodestar fee. *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992);
> *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546,
> 564 (1986) (*citing Blum*, 465 U.S. at 897). Accordingly, "modifications are
> proper only in certain 'rare' and 'exceptional' cases, supported by both 'specific
> evidence' on the record and detailed findings by the lower courts." *Delaware
> Valley Citizens' Council*, 478 U.S. at 565 (citing *Blum*, 465 U.S. at 898-901). *See
> also Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir.
> 2000).

*Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000).

Plaintiff seeks $208,155.00 in attorney fees. (Doc. 88 at 3). This includes $115,290.00

for 384.3 hours at an hourly rate of $300.00 for work performed by lead counsel Greg Mansell

and $91,375.00 for 365.5 hours at an hourly rate of $250.00 for work performed by co-counsel

Peter Friedmann.[1] (*See* Docs. 88-2, 88-5). Plaintiff also seeks $7,295.00 for costs and expenses

incurred in this case. (*See* Doc. 88 at 3; Doc. 88-3). Plaintiff argues that his attorneys' hourly

---

[1] The Court notes that adding the amounts requested by Mr. Mansell and Mr. Friedmann would yield a total fee of
only $206,665.00, not the $208,155.00 that plaintiff has requested.

rates are reasonable under the rubric formulated in Judge Rubin's 1983 committee determination of reasonable attorney rates for cases in this Court. (Doc. 88 at 7-8).

In support of the fee request, plaintiff has submitted the affidavit of Mr. Mansell in which he attests that he is a 2009 law school graduate who has billed clients at the rate of $300.00 an hour since November 1, 2015. (Affidavit of Greg R. Mansell, Doc. 88-1 at ¶¶ 2, 7). Prior to November 1, 2015, Mr. Mansell billed clients at the rate of $275.00 per hour. (*Id.* at ¶ 7). Mr. Mansell attests that he exercised billing judgment and eliminated unnecessary, excessive, or duplicative hours before submitting finalized time records to the Court. (*Id.* at ¶¶ 9-10). Further, Mr. Mansell attests that he deducted from his time records 5.3 hours related to the Court's previous order granting sanctions. (*Id.* at ¶ 11). Plaintiff has provided an itemized time sheet detailing the work performed by Mr. Mansell. (*See* Doc. 88-2).

Plaintiff has also submitted the affidavit of Mr. Friedmann in which he attests that he is a 2012 law school graduate who has billed clients at the rate of $250.00 an hour since November 1, 2015. (Affidavit of Peter G. Friedmann, Doc. 88-4 at ¶¶ 2, 6). Prior to November 1, 2015, Mr. Friedmann billed clients at the rate of $225.00 per hour. (*Id.* at ¶ 6). Mr. Friedmann attests that he exercised billing judgment and eliminated unnecessary, excessive, or duplicative hours before submitting finalized time records to the Court. (*Id.* at ¶¶ 8-9). Plaintiff has provided an itemized time sheet detailing the work performed by Mr. Friedmann. (*See* Doc. 88-5).

Finally, plaintiff has submitted the declaration of Stephen A. Simon, a Cincinnati, Ohio attorney specializing in the area of labor and employment law since 1997. (Declaration of Stephen A. Simon, Doc. 88-6 at ¶¶ 1-2). Mr. Simon is the vice-chair of the Cincinnati Bar Association's Labor and Employment Committee and has extensive experience representing individuals in employment discrimination cases in the federal and state courts. (*Id.* at ¶¶ 3, 5).

3

Mr. Simon states that in his opinion the hours detailed in Mr. Mansell and Mr. Friedmann's itemized timesheets "were reasonable and necessary considering the issues, the experience of counsel, and the proceedings in the case." (*Id.* at ¶¶ 6, 8). Mr. Simon further declares his belief that Mr. Mansell and Mr. Friedmann's "hourly rates are reasonable and within the relevant rates for counsel with their level of background, skill, and experience in Cincinnati, Ohio." (*Id.* at ¶ 9).

Defendant responds that it does not oppose the hourly rates charged by plaintiff's attorneys. (Doc. 94 at 1). However, defendant argues that 8.3 hours should be eliminated from Mr. Mansell's time, including: (1) one-half hour spent on December 16, 2014 in a meeting concerning plaintiff's current employment; (2) 2.5 hours spent on March 23, 2015 preparing for the depositions of two witnesses when Mr. Mansell was not present at those depositions; (3) 2.5 hours on May 14 and May 15, 2015 spent preparing three of plaintiff's witnesses for their depositions when plaintiff did not ask any questions at those depositions; (4) 1 hour spent on June 29, 2015 in phone calls to two witnesses to prepare them for their depositions when one of the witnesses denied ever speaking to Mr. Mansell before his deposition; and (5) 0.8 hours spent on July 6, 2015 in a phone call with a witness to prepare for a deposition when the witness previously declared that he only dealt with Mr. Friedmann.[2] (*Id.* at 1-2). Defendant contends plaintiff may not recover costs for mileage, postage, parking, meals, travel, office supplies, hotels, trial exhibits, or computer use. (*Id.* at 2-3). Defendant argues that the remaining costs for which plaintiff can recover total $2,282.70. (*Id.* at 3). Defendant contends plaintiff may not recover costs for copying without documenting what was copied and how those copies were "necessarily obtained for use in the case." (*Id.*).

---

[2] The Court notes that the line items that defendant has identified total only 7.3 hours, not the 8.3 hours asserted in defendant's brief.

In reply, plaintiff indicates that he will not challenge defendant's contention to eliminate 4.3 hours of Mr. Mansell's time related to the line items defendant identified for work performed on March 23, June 29, and July 26, 2015. (Doc. 97 at 1).  However, plaintiff argues that the one-half hour that Mr. Mansell spent meeting with plaintiff on December 15, 2014 was necessary because plaintiff's current employment was relevant to the issue of damages. (*Id.* at 2).  Further, plaintiff contends the 2.5 hours spent on May 14 and May 15, 2015 preparing plaintiff's witnesses for depositions were necessary because "these key witnesses were called by Defendant at trial and a critical piece of the case." (*Id.*).  Plaintiff argues that "[t]he fact that Plaintiff's counsel did not 'take' the depositions is not relevant to the gathering of information and preparation of the witness." (*Id.* at 2-3).  As to costs, plaintiff argues that even if costs and expenses are not specifically enumerated in 28 U.S.C. § 1920, "reasonable out-of-pocket expenses incurred by an attorney which typically would be charged to a fee-paying client are includable in a statutory award of fees under 29 U.S.C. § 2617(a)(3) of the FMLA." (*Id.* at 3).  Plaintiff requests supplemental attorney fees in the amount of $2,790.00, which represents the 9.3 hours that Mr. Mansell worked to prepare and litigate the attorney fee case. (*Id.* at 4-5; Doc. 97-1 at 3).

*The Reasonableness of the Hourly Rates*

Defendant indicates that it does not oppose the hourly rates charged by Mr. Mansell and Mr. Friedmann. (Doc. 94 at 1).  Nevertheless, even though defendant does not dispute those hourly rates, the Court has an independent obligation to determine that those rates are reasonable. *See Adcock-Ladd*, 227 F.3d at 349 ("The trial court's initial point of departure, when calculating a 'reasonable' attorney fee, should be the determination of the fee applicant's 'lodestar,' which is the proven number of hours reasonably expended on the case by an attorney, multiplied by *his*

*court-ascertained reasonable hourly rate*." (emphasis added)) (citing *Hensley*, 461 U.S. at 433).

In their affidavits, plaintiff's attorneys attest that the hourly rates they charged were lower before November 1, 2015 than the rates they charged after that date. Specifically, Mr. Mansell charged an hourly rate of $275.00 prior to November 1, 2015 and has charged $300.00 an hour since that date. (Doc. 88-1 at ¶ 7). Mr. Friedmann charged an hourly rate of $225.00 prior to November 1, 2015 and has charged $250.00 an hour since that date. (Doc. 88-4 at ¶ 6). After an independent examination of their hourly rates and the evidence plaintiff has submitted in support of those rates, the Court finds that those rates are reasonable.

In calculating the lodestar, the Court "has the discretion to choose either current or historical rates so long as it explains how the decision comports with the ultimate goals of awarding reasonable fees." *Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 617 (6th Cir. 2007). However, in determining which rate to use, the Court keeps in mind that "compensation received several years after the services were rendered . . . is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings." *Missouri v. Jenkins*, 491 U.S. 274, 283 (1989). Further, "[d]istrict courts can use either current rates or past rates with interest when calculating the lodestar amount to provide an adjustment for delay in payment." *Bank One, N.A. v. Echo Acceptance Corp.*, 595 F. Supp.2d 798, 802 (S.D. Ohio 2009) (citing *Jenkins*, 491 U.S. at 282-84).

Here, plaintiff has requested that the lodestar be calculated using current rates for all work performed in this case and defendant has not objected. The Court finds that the use of current rates is a reasonable way to account for the delay in payment to plaintiff's attorneys while this case has been pending. Accordingly, the Court will calculate the lodestar using current rates but will not award any prejudgment interest on that amount.

Thus, the Court will calculate the lodestar using a rate of $300.00 per hour for work performed by Mr. Mansell and $250.00 per hour for work performed by Mr. Friedmann.

*The Reasonableness of the Time Expended*

In his reply, plaintiff has agreed to deduct 4.3 hours from Mr. Mansell's time, but objects to defendant's contention that an additional 3 hours should also be deducted from Mr. Mansell's time. (Doc. 97 at 1-3). As to the one-half hour that Mr. Mansell spent meeting with plaintiff concerning his current employment, the Court finds that inclusion of this time was reasonable given that plaintiff's current employment was relevant to the proper calculation of back pay. Further, as to the 2.5 hours Mr. Mansell spent preparing three of plaintiff's witnesses for their depositions, the Court finds that inclusion of this time was reasonable as well. Defendant has not identified, nor is the Court aware of, any authority for the proposition that attorney fees related to a plaintiff's preparation of friendly witnesses for deposition are not recoverable if plaintiff does not ask those witnesses any questions at their depositions. Reducing Mr. Mansell's time by 4.3 hours results in a total of 380 hours expended by Mr. Mansell. The Court finds that Mr. Friedmann's hours remain at 365.5 hours.

The Court has also reviewed Mr. Mansell's request for 9.3 supplemental hours devoted to litigating the attorney fee case after the underlying litigation ended. The Sixth Circuit has instructed that while it is permissible for attorneys to collect fees related to filing a petition for fees, "in the absence of unusual circumstances, the hours allowed for preparing and litigating the attorney fee case should not exceed 3% of the hours in the main case when the issue is submitted on the papers without a trial and should not exceed 5% of the hours in the main case when a trial is necessary." *Coulter v. State of Tenn.*, 805 F.2d 146, 151 (6th Cir. 1989).

Here, of the 380 allowable hours in Mr. Mansell's original request for attorney fees, 364.5 hours were related to the main case and 15.5 hours were related to the fee petition. (*See* Doc. 88-2). Of the 9.3 supplemental hours sought by Mr. Mansell, 3.6 hours were related to the main case and 5.7 hours were related to the fee petition. (*See* Doc. 97-1 at 3). Of the 365.5 hours in Mr. Friedmann's request for attorney fees, 361.1 hours were related to the main case and 4.4 hours were related to the fee petition. (*See* Doc. 88-5). Thus, plaintiff's attorneys expended 729.2 hours (i.e., 364.5 + 3.6 + 361.1) related to the main case and 25.6 hours (i.e., 15.5 + 5.7 + 4.4) related to the fee petition. The 25.6 hours sought related to the fee petition are approximately 3.5% of the hours related to the main case. The Court finds that this amount of hours expended on litigating the fee award is reasonable given that this case went to trial and the amount sought related to the fee petition is well below the 5% ceiling for cases that proceed to trial. *See Coulter*, 805 F.2d at 151.

Based on the foregoing, the Court awards plaintiff $208,165.00 in attorney fees, which represents $114,000.00 (380 hours times $300.00) from plaintiff's original request for Mr. Mansell, $91,375.00 (365.5 hours times $250.00) from plaintiff's original request for Mr. Friedmann, and $2,790.00 (9.3 hours times $300.00) from plaintiff's supplemental request for Mr. Mansell.

*The Reasonableness of Plaintiff's Requested Costs and Expenses*

Defendant argues that plaintiff may not recover costs for mileage, postage, parking, meals, travel, office supplies, hotels, trial exhibits, or computer use because these expenses are not enumerated in 28 U.S.C. § 1920. (Doc. 94 at 2-3). This argument is not well-taken.

As already noted, the FMLA provides that the Court shall "allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant." 29

U.S.C. § 2617(a)(3). Section 1920 provides that:

> A judge or clerk of any court of the United States may tax as costs the following:
>
> > (1) Fees of the clerk and marshal;
> >
> > (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> >
> > (3) Fees and disbursements for printing and witnesses;
> >
> > (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> >
> > (5) Docket fees under section 1923 of this title;
> >
> > (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.
>
> A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

28 U.S.C. § 1920.

In a case brought under 42 U.S.C. § 1988, another fee-shifting statute, the Sixth Circuit

explained:

> There are two separate sources of authority to award out-of-pocket expenses. Some expenses are included in the concept of attorney's fees, as "incidental and necessary expenses incurred in furnishing effective and competent representation," and thus are authorized by section 1988. . . . The authority granted in section 1988 to award a "reasonable attorney's fee" included the authority to award those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services. Reasonable photocopying, paralegal expenses, and travel and telephone costs are thus recoverable pursuant to the statutory authority of § 1988.
>
> Other costs are on a different footing. These include those costs incurred by a party to be paid to a third party, not the attorney for the case, which cannot reasonably be considered to be attorney's fees. . . . These include, among others, docket fees, investigation expenses, deposition expenses, witness expenses, and the costs of charts and maps. Most of these expenses have long been recoverable, in the court's discretion as costs pursuant to 28 U.S.C. § 1920[.]

*Northcross*, 611 F.2d at 639 (citations omitted). "[T]he Supreme Court has held that fee shifting statutes with language similar to § 1988 should be interpreted like § 1988." *Evans v. Books-A-Million*, 762 F.3d 1288, 1299 (11th Cir. 2014) (citing *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)). Other courts have found that § 2617(a)(3)'s requirement that courts award "other costs" includes "reasonable out-of-pocket expenses" like many of those to which defendant now objects. *See, e.g., Walters v. Mayo Clinic Health Sys.—Eau Claire Hosp., Inc.*, 91 F. Supp.3d 1071, 1085-86 (W.D. Wis. 2015) (finding that costs for travel, including hotels and meals, were properly awarded under § 2617(a)(3)) (citing *Franzen v. Ellis Corp.*, 543 F.3d 420, 425 (7th Cir. 2008); *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 968-69 (10th Cir. 2002); *Calderon v. Witvoet*, 112 F.3d 275, 276 (7th Cir. 1997)); *Bryant v. Dollar Gen. Corp.*, No. 3:05-cv-840, 2007 WL 1875825, at *6 (M.D. Tenn. Jun. 26, 2007) ("While amounts paid for meals, parking and mileage are not costs within the meaning of Section 1920, they may be awarded as reasonable out-of-pocket litigation expenses which would be charged to a fee-paying client.") (citing *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 762 (2d Cir. 1998); *Parker v. Town of Swansea*, 310 F. Supp.2d 376, 400 (D. Mass. 2004)).

Here, even though the costs to which defendant has objected are not enumerated in § 1920, they are "incidental and necessary expenses incurred in furnishing effective and competent representation." *Northcross*, 611 F.2d at 639. Further, they are "reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Id.* Thus, the Court finds it appropriate to award these costs.

In arguing to the contrary, defendant's reliance on the Sixth Circuit's unpublished decision in *Bell v. Prefix, Inc.*, 565 F. App'x 498 (2013), is misplaced. In *Bell*, the Sixth Circuit affirmed the district court's denial of costs that were not enumerated in § 1920. *See Bell*, 565 F.

10

App'x at 502-03. In so ruling, the Sixth Circuit declined to consider the statutory interpretation issue of whether the "other costs" language in § 2617(a)(3) is limited to those costs identified in § 1920. *See id.* Instead, the Sixth Circuit found that the district court did not abuse its discretion in denying costs that "mostly constituted typical overhead expenses." *See id.* Here, the costs claimed by plaintiff were not "typical overhead expenses" for plaintiff's attorneys, but were instead specifically tied to counsels' work on plaintiff's case.

For example, the Court directed the parties to mediation. Therefore, costs for travel and parking related to the mediation were reasonable and appropriately taxed as costs. *See Waldo v. Consumers Energy Co.*, 726 F.3d 802, 827 (6th Cir. 2013) (costs related to mediation "were reasonable and necessary to provide [plaintiff] with effective representation, because such services 'conferred a benefit to the prevailing party by helping to produce a favorable result'" (citation omitted)). Further, travel costs, including mileage and parking, were reasonable and appropriately taxed as costs for depositions, the final pretrial conference, and trial. *See Colunga v. Young*, 722 F. Supp. 1479, 1488 (W.D. Mich. 1989), *aff'd* 914 F.2d 255 (6th Cir. 1990) (holding that while travel costs are not recoverable under 28 U.S.C. § 1920, they are recoverable under "the remedial and thus more broadly interpreted cost-shifting aspect" of the Fair Labor Standards Act).[3] Likewise, hotel costs for trial, meal costs for trial and depositions, and postage costs for service and subpoenas were reasonable and appropriately taxed as costs. *See Navarro v. Gen. Nutrition Corp.*, No. C-03-603, 2004 WL 2648373, at *15-16 (N.D. Cal. Nov. 19, 2004), *report and recommendation adopted in relevant part*, 2005 WL 2333803 (N.D. Cal. Sept. 22, 2005) (citing *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (reimbursing plaintiff for "necessary and reasonable costs" including meals, lodging, and postage). *See also Calderon v.*

---

[3] The Sixth Circuit "has turned to the Fair Labor Standards Act (FLSA), which contains similar remedial provisions, for guidance in interpreting the FMLA." *Arban v. W. Pub. Corp.*, 345 F.3d 390, 407 (6th Cir. 2003).

*Witvoet*, 112 F.3d 275, 276 (7th Cir. 1997) (travel and meal expenses are reimbursable as part of the award of attorneys' fees "because travel and meal expenses are the sort of things that a lawyer includes with a bill for professional services"); *Smith v. AS Am., Inc.*, No. 3:12-cv-5048, 2015 WL 1275436, at *5 (W.D. Mo. Mar. 19, 2015) (finding expenses related to postage and attorney travel reimbursable under § 2617(a)(3)).

Defendant also argues that although copying and printing costs are compensable under § 1920, plaintiff cannot recover the costs for copying and printing in this case because plaintiff has not documented "what was copied, and how those copies were 'necessarily obtained for use in the case.'" (Doc. 94 at 3). However, the Sixth Circuit does not require the stringent level of documentation that defendant appears to propose. Specifically, the Sixth Circuit found that there was no abuse of discretion in an award of costs related to copying when "[t]he declarations accompanying [the] bill of costs establish that these costs 'were necessarily incurred in this case.'" *BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 405 F.3d 415, 420 (6th Cir. 2005), *abrogated on other grounds by Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S.Ct. 1997 (2012). Here, Mr. Mansell and Mr. Friedmann have submitted affidavits in which they attest that the costs and expenses for which they seek reimbursement "are accurate and reasonable" and "would normally be billed to a fee-paying client." (Doc. 88-1 at ¶ 12; Doc. 88-4 at ¶ 10). Further, plaintiff's bill of costs indicates that the copies were made for discovery, deposition exhibits, trial binders, and trial preparation. The Court finds that copies for such purposes were "incidental and necessary expenses incurred in furnishing effective and competent representation." *Northcross*, 611 F.2d at 639. As for the computer and printing fees incurred during trial, the Court takes judicial notice that these fees were related to the preparation of exhibits and motion briefs used at trial. Thus, these expenses were reasonable and appropriately taxed as costs. *See Clements*, 100 F.

12

Supp.3d at 618-19 (finding that costs related to preparation of trial exhibit were "well within the costs allowed under § 1920(3) and (4)).

Thus, the Court finds that all of the items identified in plaintiff's bill of costs were reasonable and necessary and, thus, reimbursable. However, the Court has recalculated some of those costs related to mileage. Plaintiff has not indicated in his brief the basis for the mileage rates charged throughout this litigation. (*See generally* Doc. 88). The Court takes judicial notice that the Internal Revenue Service ("IRS") has provided a standard mileage rate of $0.575 for 2015 and $0.54 for 2016. *See* https://www.irs.gov/tax-professionals/standard-mileage-rates. The Court finds that these rates are reasonable. Plaintiff indicates that a rate of $0.59/mile was charged for travel in March 2015 related to depositions. (*See* Doc. 88-3 at 1). Nevertheless, the Court finds that in arriving at the amounts charged for that deposition travel, plaintiff actually used the proper mileage rate of $0.575 (i.e., 144 * $0.575 = $82.80). Thus, the Court will not alter the amounts charged for mileage on March 24 and 25, 2015. Further, the Court finds that plaintiff properly calculated the other mileage expenses in 2015 at the proper IRS standard mileage rate of $0.575. (*See* Doc. 88-3 at 1). However, the Court finds that plaintiff improperly charged the 2015 mileage rate of $0.575 for travel in 2016. Thus, the Court has recalculated the travel expenses in 2016 using the proper IRS standard mileage rate of $0.54 as follows:

- cost of travel to mediation on March 25, 2016 reduced from $132.26 to $124.20;

- cost of travel to final pretrial conference on April 4, 2016 reduced from $132.25 to $124.20;

- cost of travel to trial for Mr. Friedmann on April 10, 2016 reduced from $123.63 to $62.10[4];

- cost of travel to trial for Mr. Mansell on April 10, 2016 reduced from $123.63 to $62.10;

---

[4] The Court notes that plaintiff incorrectly calculated the amount for this travel even assuming a mileage rate of $0.575, as 115 miles at $0.575/mile would yield only $66.13, not $123.63. Plaintiff repeated this error in calculating Mr. Mansell's travel on April 10, 2016 and the travel of both attorneys on April 15, 2016. (*See* Doc. 88-3 at 1).

- cost of travel from trial for Mr. Friedmann on April 15, 2016 reduced from $123.63 to $62.10; and

- cost of travel from trial for Mr. Mansell on April 15, 2016 reduced from $123.63 to $62.10.

(*See* Doc. 88-3 at 1). This results in a total reduction of $262.23. Thus, plaintiff's costs will be reduced from $7,295.00 to $7,023.77.

In summary, the Court finds that plaintiff's bill of costs in the amount of $7,023.77 is reasonable based on the foregoing analysis, the Court's review of the supporting documents, and the Court's consideration of the length of time this matter was pending before this Court, the number of witnesses deposed, and the need for a jury trial to resolve this matter. The Court further notes that plaintiff properly reduced the amount of costs he requested by $340.00 in costs related to the Court's previous order granting sanctions. (*See* Doc. 88-3 at 1). Accordingly, the Court awards plaintiff costs and expenses in the amount of $7,023.77.

**III. Motion for Post-judgment Interest (Doc. 93)**

Plaintiff moves to amend the judgment under Fed. R. Civ. P. 59(e) to include post-judgment interest. (Doc. 93 at 1). Plaintiff argues that under 28 U.S.C. § 1961, post-judgment interest should be calculated "at a rate equal to the weekly average one-year constant maturity Treasury yield as published by the Federal Reserve." (*Id.* at 3).

Defendant agrees that § 1961 "provides the authority and method for calculating post-judgment interest." (Doc. 95 at 1). Defendant contends, however, that "because Plaintiff's Rule 59 motion suspends the finality of the Court's May 10, 2016 judgment, no final judgment has been placed of record, and none will be operative until the Court[] decides this motion." (*Id.*). Therefore, defendant argues that its obligation to pay post-judgment interest does not accrue until the Court enters a final judgment in this case. (*Id.*).

14

In reply, plaintiff argues that "[t]o the extent post-judgment interest is not to be applied until a final judgment is entered, as stated by Defendants, then prejudgment interest shall be applied until that date." (Doc. 98 at 1).

Here, the parties agree that post-judgment interest should be applied in the manner described in 28 U.S.C. § 1961. Under § 1961, post-judgment "interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). Nevertheless, the parties dispute which date controls "the entry of judgment" under § 1961 and the rate of interest to be applied in this case. Thus, the Court must determine: (1) whether the judgment must be amended to allow for post-judgment interest; (2) the date from which post-judgment interest should run; and (3) what interest rate should apply.

The Court declines to amend the judgment for purposes of awarding post-judgment interest. The Sixth Circuit has held that post-judgment interest is mandatory under § 1961. *Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 586 (6th Cir. 2002). Thus, it is not necessary to amend the May 10, 2016 judgment—the only judgment in this case—to reflect an award of post-judgment interest, as plaintiff is entitled to post-judgment interest regardless of whether the district court explicitly awards it. *See id.* (holding that district court has no discretion to deny post-judgment interest).[5]

The next question is when does prejudgment interest stop and post-judgment interest begin? The Supreme Court has determined that the "date of entry of judgment" for purposes of

---

[5] Defendant is correct that plaintiff's Rule 59(e) suspends the finality of the May 10 judgment. (*See* Doc. 95 at 1). However, the Court need not enter a new judgment for there to be a final appealable judgment on the record. Instead, the May 10 judgment becomes final as of the date of the instant Order, which disposes of plaintiff's pending Rule 59 motion. *See* Fed. R. App. P. 4(a)(4)(A)(iv). *See also Smith v. Hudson*, 600 F.2d 60, 62 (6th Cir. 1979).

post-judgment interest under § 1961 is the date when damages have been meaningfully ascertained. *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 836 (1990). "[T]he purpose of postjudgment interest is to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant." *Id.* at 835-36. In applying *Kaiser*, the Sixth Circuit has held that post-judgment interest begins to run when the plaintiff's unconditional legal entitlement to prejudgment interest was initially established. *Caffey*, 302 F.3d at 587. In other words, "postjudgment interest begins to accrue on a damages judgment from the original date of entry of that judgment, even if the amount of the judgment is subsequently modified by a 'distinct' and 'easily determined' amount, as long as the judgment is not completely set aside." *Id.* at 588 (quoting *Coal Res., Inc. v. Gulf & W. Indus., Inc.*, 954 F.2d 1263, 1275 (6th Cir. 1992)). The Sixth Circuit has rejected the notion that "the date of the entry of the judgment" as used in § 1961 means only a final appealable judgment. *Id.* (citing *Skalka v. Fernald Envtl. Restoration Mgmt. Corp.*, 178 F.3d 414, 429 (6th Cir. 1999)). *See also Stryker Corp. v. XL Ins. Am.*, 681 F.3d 806, 818 (6th Cir. 2012) ("judgment," for purposes of § 1961, means "any judgment that is not entirely set aside"). "[P]ost judgment interest should be awarded on the entire amount of the judgment, to include the prejudgment interest element of the damages award, as well as any later awarded attorney fees or costs." *Florists' Mut. Ins. Co. v. Ludy Greenhouse Mfg. Corp.*, 521 F. Supp.2d 661, 692 (S.D. Ohio 2007) (citing *Caffey*, 302 F.3d at 586, 589). *See also Associated Gen. Contractors of Ohio, Inc. v. Drabik*, 250 F.3d 482, 495 (6th Cir. 2001) ("§ 1961(a) permits the interest to run on a fee award from the time of entry of the judgment which unconditionally entitles the prevailing party to reasonable attorney fees").

In the instant case, the Court determines that post-judgment interest begins on May 10, 2016, the date judgment was entered for plaintiff on the jury's damage award, liquidated damages, and prejudgment interest. (Doc. 90). Plaintiff's damages were meaningfully ascertained by the judgment of May 10, 2016, and that judgment has not been set aside in any respect. An award of post-judgment interest from the date of the May 10, 2016 judgment to the date of defendant's payment will fairly compensate plaintiff for his losses. Plaintiff is also entitled to interest on attorney fees from May 10, 2016, the date he became unconditionally entitled to such fees,[6] even though such fees were not yet reduced to a sum certain. *Drabik*, 250 F.3d at 495. Thus, the Court finds that post-judgment interest in this case should be assessed from May 10, 2016 and prejudgment interest should be applied through that date.

Finally, the Court takes judicial notice of the fact that the post-judgment interest rate in effect at the time of the May 10 judgment was 0.52% based on the rate applicable during the week ending May 6, 2016. *See* http://www.utd.uscourts.gov/documents/int2016.html.

Based on the foregoing, plaintiff's motion for post-judgment interest is granted. Plaintiff is entitled to post-judgment interest on the entire amount of the judgment, to include prejudgment interest and attorney fees and costs. The parties are directed that post-judgment interest in this matter should be assessed from the date of the Court's May 10, 2016 judgment at a rate of 0.52%.

**IV. Motion to Clarify the Prejudgment Interest Rate and Duration (Doc. 92)**

An employer who has violated the FMLA shall be liable for damages equal to:

(i) the amount of—

---

[6] A prevailing plaintiff is statutorily entitled to his reasonable attorney's fee under the FMLA. *See* 29 U.S.C. § 2617(a)(3) (the Court "*shall*, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant.") (emphasis added); *Clements v. Prudential Protective Servs., LLC*, 100 F. Supp. 3d 604, 613 (E.D. Mich. 2015).

(I) any wages, salary, employment benefits, or other compensation denied
or lost to such employee by reason of the violation; . . .

. . .

(ii) the *interest* on the amount described in clause (i) *calculated at the prevailing
rate*; and

(iii) an additional amount as liquidated damages equal to the sum of the amount
described in clause (i) and the interest described in clause (ii)[.]

29 U.S.C. § 2617(a)(1)(A) (emphasis added). "The statute does not define 'the prevailing rate,'

. . . and trial courts have exercised their discretion to find different methodologies of calculation

appropriate in different contexts." *Bell v. Prefix, Inc.*, 500 F. App'x 473, 474 (6th Cir. 2012)

(citations omitted).

Plaintiff argues that the Court should apply a prejudgment interest rate of 3.0% per

annum, which is the statutory interest rate in Ohio. (Doc. 92 at 2-3).

Defendant responds that in calculating prejudgment interest, the Court should apply an

interest rate of 0.12% per annum, which represents the federal rate for post-judgment interest

under 28 U.S.C. § 1961 during the week of plaintiff's termination in February 2014. (Doc. 96 at

1-2). Defendant argues that the federal post-judgment interest rate should be applied in

calculating prejudgment interest in this case because "[t]he amount of pre-judgment interest paid

on a federal law judgment should not depend on the venue where the case is decided." (*Id.* at 2).

In reply, plaintiff argues that "when a federal statute is silent on a particular matter, the

federal courts often incorporate state law as the federal rule of decision." (Doc. 99 at 1).

Plaintiff contends that while the Sixth Circuit has not mandated the interest rate that must be

applied in FMLA cases, the First and Eighth Circuits apply the state statutory rate, the Third and

Ninth Circuits apply a blended rate of the state statutory rate and the prime rate, and the Seventh

Circuit applies the prime rate. (*Id.* at 2-3). Plaintiff argues that the state statutory rate should be

applied in this case under the rationale that prejudgment interest is compensatory in nature and "the postjudgment rate is too low to account for risk of default." (*Id.* at 3).

Here, the Court will use the state statutory rate in calculating prejudgment interest. The Court notes that "[i]n the Sixth Circuit, courts generally use the state statutory rate in calculating pre-judgment interest in FMLA cases." *Clements v. Prudential Protective Servs., LLC*, 100 F. Supp.3d 604, 619 (E.D. Mich. 2015) (collecting cases). Additionally, the Court finds persuasive the reasoning in *Hite v. Vermeer Mfg. Co.*, 361 F. Supp.2d 935, 948-50 (S.D. Iowa 2005), *aff'd*, 446 F.3d 858, 869 (8th Cir. 2006). In applying prejudgment interest in *Hite*, the district court had to choose between the federal post-judgment interest rate of 2.96%, the state statutory rate of 4.96%, and the prime rate of 5.5%. *Id.* at 949. In determining the proper rate, the court noted "the danger of setting prejudgment interest rates too low by neglecting the risk, often nontrivial, of default." *Id.* (quoting *Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 437 (7th Cir. 1989)). Ultimately, the court applied the state statutory rate because "while the statutory interest rate under section 1961 is too low, the prime rate overestimates the risk of default" for a "large, well-established employer." *Id.* In this case, the Court agrees that the state statutory rate strikes the proper balance between the § 1961 rate and the prime rate.

The Court takes judicial notice of the fact that the state statutory interest rate in calendar years 2014, 2015, and 2016 was 3.0%. *See* Ohio Rev. Code §§ 1343.03(A), 5703.47; http://www.tax.ohio.gov/ohio_individual/individual/interest_rates.aspx. Accordingly, the Court will calculate prejudgment interest at a rate of 3.0%. In addition to the rate of interest, the Court must also determine the time period for which prejudgment interest should be assessed and the appropriate method of compounding. The Court finds that plaintiff is entitled to prejudgment interest from February 17, 2014 (the date of his termination) until May 10, 2016 (the date of the

Court's judgment). *See Bell v. Prefix, Inc.*, No. 05-74311, 2010 WL 2089323, at *5 (E.D. Mich. May 24, 2010) (finding plaintiff was entitled to prejudgment interest from the date of his termination); *Finnerty v. Wireless Retail, Inc.*, No. 2:04-cv-40247, 2009 WL 2568555, at *3 (E.D. Mich. Aug. 18, 2009) (same).

As to compounding, the parties have not presented any arguments concerning the appropriate method of compounding, but defendant has recognized that some degree of compounding is appropriate. (*See* Doc. 96 at 2). The Court finds persuasive the decision in *Hite*, which found that § 1961 "serve[s] as a reasonable guidepost for determining whether to permit compound interest." *Hite*, 361 F. Supp.2d at 950. Under § 1961, "[i]nterest shall be computed daily to the date of payment . . . and shall be compounded annually." 28 U.S.C. § 1961(b). Accordingly, the Court finds that prejudgment interest in this matter shall be computed daily and compounded annually.

Based on the foregoing, the Court awards $9,721.59 in prejudgment interest on plaintiff's damages award of $142,717.71. In reaching this amount, the Court finds that plaintiff is entitled to $4,281.53 in prejudgment interest for the period from February 17, 2014 to February 16, 2015 (i.e., $142,717.71 * 0.03 = $4,281.53). The Court compounds this amount into plaintiff's damages award, yielding $146,999.24 (i.e., $142,717.71 + $4,281.53 = $146,999.24). The Court then finds that plaintiff is entitled to $4,409.98 in prejudgment interest for the period from February 17, 2015 to February 16, 2016 (i.e., $146,999.24 * 0.03 = $4,409.98). The Court compounds this amount into plaintiff's damages award yielding $151,409.22 (i.e., $146,999.24 + $4,409.98 = $151,409.22). The Court then finds that plaintiff is entitled to $1,030.08 in prejudgment interest for the period from February 17, 2016 to May 10, 2016 (i.e., $151,409.22 * 0.03 ÷ 366 days in 2016 * 83 days in this period = $1,030.08). Compounding this into plaintiff's

20

damages award yields total damages and prejudgment interest of $152,439.30 (i.e., $151,409.22 + $1,030.08 = $152,439.30). This amount is then doubled to account for the liquidated damages on plaintiff's award of damages and prejudgment interest. *See* 29 U.S.C. § 2617(a)(1)(A); *Clements*, 100 F. Supp.3d at 621-22 (and cases cited therein). Accordingly, the total amount of plaintiff's back pay award, prejudgment interest, and liquidated damages is $304,878.60.

**V. Conclusion**

Consistent with the foregoing:

1. Plaintiff's motion for attorneys' fees and costs (Doc. 88) is **GRANTED IN PART**. Plaintiff is **AWARDED $208,165.00** in attorney fees, which represents $114,000.00 from plaintiff's original request for Mr. Mansell, $91,375.00 from plaintiff's original request for Mr. Friedmann, and $2,790.00 from plaintiff's supplemental request for Mr. Mansell. Further, plaintiff is **AWARDED** costs and expenses in the amount of **$7,023.77**. The parties are **DIRECTED** that no prejudgment interest is to be applied to the award of attorneys' fees and costs.

2. Plaintiff's motion for post-judgment interest (Doc. 93) is **GRANTED**. The parties are **DIRECTED** that post-judgment interest on plaintiff's award of back pay, prejudgment interest, and liquidated damages, as well as the award of attorneys' fees and costs, should be assessed from the date of the Court's May 10, 2016 judgment at a rate of 0.52%.

3. Plaintiff's motion to clarify the prejudgment interest rate and duration (Doc. 92) is **GRANTED**. Plaintiff is **AWARDED** $9,721.59 in prejudgment interest on his award of back pay. Thus, plaintiff is **AWARDED** a total of **$304,878.60** in back pay, prejudgment

interest, and liquidated damages.

**IT IS SO ORDERED.**

Date: ___6/29/16___

_Karen L. Litkovitz_
Karen L. Litkovitz
United States Magistrate Judge